FILED'08 FEB 07 15:50USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERRY D. McCLANAHAN,                )
                                    )   Civil No. 05-1818-PA
        Petitioner,                 )
                                    )
    v.                              )
                                    )
SHARON BLACKETTER,                  )
                                    )   OPINION AND ORDER
        Respondent.                 )

Kendra M. Matthews
Ranson Blackman LLP
1001 SW Fifth Avenue, Suite 1400
Portland, Oregon 97204-1144

    Attorney for Petitioner

Hardy Myers
Attorney General
Lester R. Huntsinger
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

///

1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his state court convictions and sentence. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#37) is denied.

## BACKGROUND

On May 1, 1995, petitioner, Gregory Scott, and Carl Beaulieu beat Christopher Frascona to death. The Multnomah County grand jury returned an indictment charging them with Aggravated Felony Murder, Aggravated Murder, Murder, and Felony Murder. Respondent's Exhibit 104, App. 1, 2.

Prior to trial, petitioner's attorney moved to suppress any evidence discovered by the Portland Police Department due to its allegedly illegal search of the premises where Frascona was murdered. Respondent's Exhibit 121. Petitioner asserted that the search was unlawful because a warrant was never issued, and there were no exigent circumstances to justify a search. The trial court denied the motion, finding "no evidence from which [the court] can find that this defendant has any reasonable right to expect privacy. . ." *Id* at 172. The trial court also concluded that exigent circumstances justified the search, and that the police did, in fact, obtain a warrant. *Id* at 173-74.

Thereafter, petitioner entered into an agreement to forego a jury trial and proceed on a stipulated facts trial as to charges of

2 - OPINION AND ORDER

Manslaughter in the First Degree and Kidnaping in the First Degree. Respondent's Exhibits 103 and 104, App. 3. In exchange, the State agreed to dismiss the remainder of the charges. Respondent's Exhibit 103. The petition for a stipulated facts trial, however, contained an ambiguity. Within the same paragraph, it provided that "the maximum possible sentence is 20 years imprisonment" but also stated that the District Attorney's recommendation would total 300 months, the equivalent of 25 years. Respondent's Exhibit 102, p. 2.

The Plea Agreement formally executed by both parties did not, however, present any such ambiguity. The Agreement specifically provided that "[t]he court will impose a total sentence of 300 months (25 years)," and it made no mention of a 20-year sentence. Respondent's Exhibit 103, p. 2. This document was signed by petitioner, his attorney, and two prosecuting attorneys. *Id* at 3.

The case proceeded to the stipulated facts trial where the court found petitioner guilty of Manslaughter in the First Degree and Kidnaping in the First Degree. Trial Transcript, p. 367. In accordance with the Plea Agreement, the court sentenced petitioner to 300 months in prison. *Id* at 375-76.

Petitioner filed a direct appeal challenging the legality of Oregon's mandatory minimum sentencing statute, but the Oregon Court of Appeals affirmed the sentence from the bench, and the Oregon Supreme Court denied review. Respondent's Exhibits 107, 108.

3 - OPINION AND ORDER

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County, but the PCR trial court denied relief on all claims. Respondent's Exhibits 125-127. The Oregon Court of Appeals denied relief in a *per curiam* opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 134-135.

In September 2005, petitioner filed a motion in the Multnomah County Circuit Court asking it to reduce his 210-month Manslaughter sentence on the basis that it exceeded the maximum sentence permitted by law. Petitioner's Exhibit 3. The Circuit Court denied the motion on procedural grounds, reasoning that it "lack[ed] authority to address the issues raised by the defendant. . . ." Petitioner's Exhibit 4. Although petitioner also petitioned the Oregon Supreme Court for mandamus relief on this issue, the Oregon Supreme Court denied the petition. Petitioner's Exhibits 5-7.

On December 1, 2005, petitioner initiated this federal habeas corpus action with his *pro se* Petition which he amended on June 5, 2007. In his Amended Petition, petitioner raises the following claims:

    1. Trial counsel failed to ensure that petitioner properly understood the maximum sentence that could be imposed prior to petitioner's decision to forego a jury trial;

    2. Trial counsel failed to ensure that witness Michael Wicks was available for use in trial and negotiations;

4 - OPINION AND ORDER

3.  Trial counsel failed to adequately represent petitioner on the pretrial motion to suppress when he did not present evidence that petitioner had a privacy interest in the property, and further failed to illustrate to the court that the State did not establish with certainty that a warrant had actually been obtained;

4.  Appellate counsel failed to challenge the trial court's decision to impose a sentence totaling 25 years when the maximum possible sentence identified in one paragraph of the petition for waiver of jury trial was only 20 years;

5.  Appellate counsel failed to challenge the trial court's denial of his pretrial motion to suppress;

6.  Petitioner's sentence violates the Sixth and Fourteenth Amendments because it violates the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), a decision which should be applied retroactively to cases on collateral review; and

7.  Petitioner's sentence violates the Eighth and Fourteenth Amendments because his sentence for Manslaughter in the First Degree exceeds the maximum sentence permitted by Oregon law by six months.

Respondent asks the court to deny relief on the Amended Petition because: (1) the state court decisions on Grounds One through Five are entitled to deference, and those claims lack merit; (2) Ground Six fails to state a cognizable claim; and (3) Ground Seven is both untimely and procedurally defaulted.

## DISCUSSION

### I. Standard of Review.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in

5 - OPINION AND ORDER

a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still defers to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Analysis.

    A. Grounds One and Four: Representation Pertaining to the Maximum Permissible Sentence Petitioner Faced.

Petitioner argues that his trial attorney did not provide him with competent advice with respect to the maximum possible sentence he faced. Petitioner bases his claim on the contents of a paragraph in his petition to waive his jury trial which identified the maximum possible sentence as 20 years in prison. Because petitioner faced an exposure of 25 years, and ultimately received the greater sentence, he claims that his constitutional right to competent counsel was implicated.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must

7 - OPINION AND ORDER

indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty or no contest to an offense must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Although petitioner did not plead guilty or no contest in this case, he did forego his opportunity to present his case to a jury. Accordingly, the court concludes that this standard applies.

The PCR trial court made the following factual findings with respect to this claim:

> 2. Petitioner signed an agreement to waive jury trial and try the case to the court upon stipulated facts. Therein, petitioner stated he is 'satisfied with the advice and help he [his attorney] has given me.'

Respondent's Exhibit 126, p. 3. As a matter of law, the PCR trial court concluded that petitioner's acceptance of the jury waiver and stipulated facts trial was knowing, intelligent, and voluntarily. *Id* at 5.

8 - OPINION AND ORDER

There is no question that paragraph seven of the document entitled "Petition to Waive Jury Trial and Try the Case to the Court upon Stipulated Facts" states that "the maximum possible sentence is 20 years imprisonment. . . ." Respondent's Exhibit 102, p. 1. However, it also states that the district attorney is permitted to recommend a sentence of "210 months [on the kidnapping], additional 90 months on manslaughter." *Id* at 2. Thus the total recommended sentence could be 300 months, or 25 years. Petitioner specifically initialed this section of the document pertaining to the district attorney's recommendation. *Id.*

Petitioner argues that he did not understand that 300 months equated to 25 years and believed that he faced a maximum of only 20 years in prison. This assertion is belied by the Plea Agreement which provided, in relevant part, as follows:

6. The parties stipulate that on the Manslaughter in the First Degree charge the defendant is a 10-C. Furthermore, the parties stipulate that the court may depart upward to 210 months.

7. The defendant understands that the court depart (sic) and impose a sentence of 210 months incarceration on Manslaughter in the First Degree. The defendant understands that 120 months of the sentence will be pursuant to Ballot Measure 11. In addition the court will impose a 90 months consecutive sentence also pursuant to Ballot Measure 11 on the charge of Kidnapping in the First Degree. **The court will impose a total sentence of 300 months (25 years).** * * *.

8. The defendant specifically understands and agrees with the terms of this agreement and he acknowledges that he has consulted with his attorney and carefully reviewed each and every

9 - OPINION AND ORDER

> condition and part of this agreement with his attorney. The defendant further acknowledges that it is his desire to enter into this agreement.

Respondent's Exhibit 103, p. 2 (emphasis added). Petitioner signed the agreement directly under the section which reads: "I have read this agreement carefully and reviewed each and every part of it with my attorney. I understand and voluntarily agree to it." *Id* at 3.

Moreover, when the court and the parties explored this agreement in depth, petitioner indicated on the record that he understood that he would receive a 25-year sentence:

> Court:  All right. **And you're satisfied you understand the effect of the -- this complex sentence, it will result in a total of a 25 year sentence**, and of that 210 months will be a flat time sentence. You won't get any good time and you can't get a terminal leave or go to boot camp or shorten it in any other way, other than I suppose the Governor would have the authority to commute it or pardon. But that, frankly, hasn't been done in years in this state. So I think you could assume there's no chance of that.
>
> Pet'r:  I understand that, Your Honor.
>
> * * *
>
> Court:  Okay. Any questions on anything I have discussed?
>
> Pet'r:  No, Your Honor.

Trial Transcript, pp. 353, 359 (emphasis added). During this proceeding, petitioner never indicated that he had any questions about his sentence nor is there any confusion which is apparent in the record.

10 - OPINION AND ORDER

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Not only did petitioner declare in court that he understood his sentence to be 25 years, but he also signed the Plea Agreement which clearly stated that his sentence would be 25 years. The "Petition to Waive Jury Trial and Try the Case to the Court Upon Stipulate Facts" is the only place where a reference is made to a 20-year sentence, and even that Petition also indicates in the very same paragraph that the sentence would be 300 months, a figure which petitioner specifically initialed. Respondent's Exhibit 120, p. 2.

In light of all the evidence in the record, it appears that petitioner knowingly and voluntarily entered into his plea agreement with the knowledge that he would serve a 25-year sentence. Accordingly, petitioner cannot prove that he was prejudiced as a result of any deficient performance of counsel, and the PCR trial court's decision did not involve an unreasonable application of *Strickland* to the facts of petitioner's case. Because petitioner was aware that he would receive a 25-year sentence, his Ground Four claim faulting appellate counsel for not raising this issue must also fail. See *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (requiring petitioner to show that a claim not raised on appeal was not only meritorious, but was "clearly stronger than issues that counsel did present.").

11 - OPINION AND ORDER

### B. Ground Two: Trial Counsel's Failure to Ensure that Michael Wicks was Available for Trial and Negotiations.

According to petitioner, trial counsel possessed a letter from Michael Wicks who, at the time he penned the letter on February 24, 1997, was an inmate at the Multnomah County Detention Center. In the letter, Wicks indicated that Greg Scott, a fellow inmate and petitioner's co-defendant, told him that he (Scott) had killed Frascona and that petitioner had actually attempted to break up the fight. Respondent's Exhibit 112. Petitioner argues that had counsel secured this witness, there is a reasonable probability that the State would have had some question about petitioner's role in the offense, and he would have been in a better position in his negotiations.

The PCR trial court denied relief on this claim, finding:

8.   Petitioner presented no evidence that would clearly have a tendency to affect the result of the prosecution.

* * *

11.  Petitioner failed to present evidence of witnesses suggested to support Petitioner's contentions. In cases where the prejudice described is that of failure to call witnesses, a petitioner must present the testimony of those witnesses in the post-conviction proceeding. *See, Stevens v. State of Oregon*, 322 Or 101, 105-06 (1989); *DeHart V. State of Oregon*, 55 Or App 254 (1981). In short, the Petitioner must demonstrate in the post-conviction proceeding what helpful evidence was lost by counsel's actions in order to establish prejudice. *See also New v. Armenakis*, 156 Or App 24, 29 (1998).

12 - OPINION AND ORDER

> 12. Trial Counsel's investigation and preparation, including witnesses and subpoenas was proper under the circumstances then existing, and within the scope of tactical choice, and within the bounds of the law. No prejudice was shown.

Respondent's Exhibit 126, pp. 4-5.

During his PCR trial, petitioner submitted Wick's letter for consideration, as well as an affidavit from Wick swearing that the contents of the letter were true. Respondent's Exhibits 112, 114. The State objected on the basis that the proposed exhibits were uncorroborated hearsay. Respondent's Exhibit 124, pp. 3, 24. The PCR trial court sustained the objection, leaving petitioner with no evidence aside from his own assertions to support his claim of ineffective assistance of counsel. Respondent's Exhibit 125, p. 3.

The PCR trial court's conclusion regarding the admissibility of Wick's letter and affidavit as a matter of Oregon evidence law is not reviewable. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In the absence of any evidence in the record to support petitioner's claim, the PCR trial court did not unreasonably apply *Strickland* when it denied relief.

## C. Grounds Three and Five: Representation Pertaining to the Motion to Suppress.

As Ground Three, petitioner alleges that trial counsel failed to adequately represent him on the pretrial motion to suppress when counsel: (1) did not present evidence that petitioner had a privacy

13 - OPINION AND ORDER

interest in the property where the murder occurred; and (2) failed to illustrate to the court that the State did not establish with certainty that a warrant had actually been obtained.

The police initially responded to an eyewitness who informed a patrolling officer that someone was being beaten and was going to be killed. Trial Transcript, p. 171. The patrol officer called for backup, and proceeded to the scene where the officers were able to see through a partially covered window into the apartment. They "could see two people standing over a person who was slumped over on the floor, who turned out to be the victim." Trial Transcript, p. 54. One of the people standing over Frascona was petitioner. Police officers announced themselves and entered the premises. *Id.* At the time, Frascona was still alive and the perpetrators of the crime had fled into the basement of the house. *Id.*

> After the police apprehended the three suspects, they were aware of the fact that the victim had died. So what they did is they then decided to get a search warrant. They removed everybody from the house.
>
> A telephonic search warrant was prepared by [Portland Police Officer] Carolyn Crawford. She called Judge Dorothy Baker. Judge Dorothy Baker authorized the signing of the search warrant.* * *.
>
> No one went inside the premises. I believe even the medical examiner, the deputy medical examiner, he didn't even go inside. And that after Judge Baker authorized the warrant the police went in and they seized the things that had been laying in plain view.
>
> The warrant was -- well, the warrant is not in the file room care. Carolyn Crawford would talk about what she did to get the warrant signed, and she in fact signed Judge Baker's signature.

14 - OPINION AND ORDER

> Also I talked to Judge Baker this morning, she said she would be prepared to come in and say she recalls when the warrant came back and she listened to the tape and compared it to the affidavit that we have. And then she doesn't know exactly what happens to it, she thinks she may have, you know, she says, you know it did come back to her, and what happened after that we are not positive. All we know is it's not in the file room. But we have the witness who would testify that she called Judge Baker, Judge Baker authorized it, and we have the documentation of what was written and also a transcription of what was on the tape.

*Id* at 55-57.

The trial court treated the motion to suppress as addressing two separate searches, the first entry where the suspects were apprehended and the second entry where evidence was collected. It found that there was "no evidence from which [the court] can find that this defendant has any reasonable right to expect privacy," and therefore concluded that petitioner did not have standing to move to suppress items seized from someone else's home. *Id* at 172.

The trial judge believed that "as a matter of law, that would end it." Id. But he continued to make additional findings that the first entrance into the residence was permissible due to exigent circumstances. *Id* at 173. With respect to the re-entry of the residence to collect evidence, the trial judge found that because there was no urgency, the officers "did what they are constantly urged by appellate courts to do, they secured the premises and sought a warrant after they determined there was nothing more that could be done for the victim. They left the victim where he was and spent the next five or six hours getting a

15 - OPINION AND ORDER

warrant and then searched pursuant to that warrant." *Id* at 174.

Petitioner first argues that he did, in fact, have a privacy interest in the dwelling which was searched, but that trial counsel failed to present evidence of this to the trial court. Even assuming petitioner had a privacy interest in the home, exigent circumstances clearly allowed officers to go into the dwelling while Frascona was being lethally assaulted.

With respect to the second entry of the property where police recovered the weapons used in the attack, the criminal trial court concluded that Judge Baker had, in fact, issued a warrant to search the premises. This is a factual finding by a state court which is entitled to a presumption of correctness absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner fails to present the court with clear and convincing evidence that Judge Baker never actually issued such a warrant.

Taking this factual finding as true, petitioner cannot prove that he was prejudiced by any failure on the part of counsel to press the legality of the seizure in the trial court. Indeed, it appears from the record that a warrant was, in fact, obtained from Judge Baker prior to the second entry in to the residence. Accordingly, the post-conviction court's conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law. For these reasons, petitioner's Ground

16 - OPINION AND ORDER

Five claim faulting counsel for not raising this issue must also fail.

### D. Ground Six: *Blakely* Violation.

Petitioner next alleges that the trial court erred when it imposed a sentence in violation of the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004). He asks the court to apply *Blakely's* ruling retroactively to his case, but as he acknowledges, the Ninth Circuit prohibits such an application. *Schardt v. Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005). Accordingly, relief on this claim is denied.

### E. Ground Seven: Unlawful Sentence in Excess of Oregon Law.

Finally, petitioner asserts that his sentence for Manslaughter in the First Degree exceeds the maximum allowable under Oregon law. This is a new claim which was not contained in the original Petition, but was included in the Amended Petition. It is clear from the record that the Amended Petition was filed well after the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations, thus the claim is untimely and the court may not consider it. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) (amended petition does not relate back to the original if "it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").

17 - OPINION AND ORDER

Even if petitioner had timely raised his Ground Seven claim, he did not present it to the Oregon courts in a procedural context in which the merits were actually considered. *See Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (a petitioner must give the state courts a meaningful opportunity to consider his allegations of legal error). As discussed in the Background of this Opinion, petitioner presented this claim to the Multnomah County Circuit Court in 2005 in a motion seeking to have his sentence corrected. The Circuit Court denied the motion, reasoning that it "lack[ed] authority to address the issues raised by the defendant. . . ." Petitioner's Exhibit 4.

Although petitioner also presented his claim directly to the Oregon Supreme Court in a mandamus action, this was insufficient to fairly present it because a petition for writ of mandamus is not appropriate if the petitioner has a plain, speedy, and adequate remedy at law. O.R.S. 34.110. Petitioner's appropriate remedy by which to challenge his sentence was an objection at the trial level and, if unsuccessful, direct appeal to the Oregon Court of Appeals and Oregon Supreme Court. A petitioner who fails to complete judicial review of a decision is not entitled to mandamus relief. *See Wise v. Hays*, 74 Or. App. 245, 701 P.2d 1054 (mandamus cannot be used as a substitute for direct appeal).

Because petitioner did not present this claim to the state courts in a context in which the merits were considered, and as the

18 - OPINION AND ORDER

time for doing so passed long ago, his claim is procedurally defaulted and not eligible for habeas review on the merits. *See Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004).

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#37) is DENIED.

IT IS SO ORDERED.

DATED this ___ day of February, 2008.

Owen M. Panner
United States District Judge

19 - OPINION AND ORDER